Good morning, Counsel. Good morning, Your Honors. Saman Gulistan on behalf of the appellant. May it please the Court. Can I ask you just one question right off the bat? Yes, sir. If I understand the record correctly, you're disputing less than $1,000. Why are you here? It obviously costs your client a whole lot more than $1,000 for you to be involved in this. What's at stake here? Am I missing something? You're right that the record in this case is over $1,000. The issue is the aggregate effects of the department's continual misuse of identity. It's misapplication of the public interest. And in this case, you're the client. Say again? And in this case, in effect, you're the client. Well, in this case. I mean, it's the Torres Consulting is the party and you're part of Torres Consulting, are you not? Yes, Your Honor. So Torres Law Group represents the Torres Consulting and Law Group. Torres Consulting and Law Group made the 4-year request in a representative capacity on behalf of the Colorado. So, I mean, I'm not criticizing. I'm just saying this affects your business model. It affects. Well, no, Your Honor. I mean, the extent that we're here, we're here in a representative capacity. I understand. I understand. And in answer to Judge Smith's question, why didn't you do it? Why is it a thought? Why are you doing all this for $1,000 if you're billing your client for all this? The answer is that at the end of the day, it's your business model that's at issue, is it not? Well, really, Your Honor, the answer at the end of the day is that the client is the one that is going to be the one that has charged the actual requester, the Colorado Building and Construction Trade Council. Fair enough. Whose burden was it to establish that you were entitled to the commercial classification as opposed to the other? So as an initial matter, Your Honor, it is the burden on the plaintiff and the appellant in this case, Taurus Consulting Law Group, who made the request in a representative capacity to submit with its request statements about and evidence of its use. Okay. And in this case, that's exactly what happened. And you did. So my question is, can those – are you telling us that what you submitted as a matter of law can only be interpreted as noncommercial? Yes. In the case – the question is this. Is the use of these records, the certified payroll records, for the purpose of compliance with Federal law a commercial use? The answer is no. I mean, because you have to ask – the question is not whether the identity of the That's unfortunately what the Department utilized here, the underlying identity of the Colorado. No, I understand. I'm asking a different question. So see if you can focus. The question I'm asking is, looking at all the stuff you submitted, is the only conclusion that can be reached from that is that you want to use these records for a noncommercial purpose? Yes. The only conclusion is that the only actual use of these records is compliance – reviewing, monitoring compliance with Federal law and submission of third-party complaints to the Department of Labor where violations have been found. And as a result of bringing these Davis-Bacon violations to the attention of the Department of Labor, do you expect or hope that something will happen? Well, the only hope and the only thing that does – well, let me rephrase. The only thing that can really happen in these cases, Your Honor, is that the workers who are being cheated out of their pay under the Davis-Bacon Act can be reimbursed for back wages. Okay. So somebody benefits. The workers benefit. Right. So in this case, the benefit – the direct benefit goes to a third party, which are unaffiliated and unknown workers that are not affiliated with the party who is making that complaint. So there is a third – there is a benefit to a third party, certainly. And these are use categories. They are – The categories are use categories. Yes. So this information is being used to bring Davis-Bacon violations to the attention of the Labor Department, and someone benefits. And these are the unknown, unnamed laborers. Why is that not a commercial use? Well, it's not a commercial use, and particularly in this record. First of all, more broadly, it is not a commercial use because the benefit for the third party is to the requester. And the request not to a third party, not to the public, not to anybody else, but to the requester. And in this case, the requester doesn't get any remuneration, doesn't get any particular benefit. The only – actually, the only benefit is to these unknown and unnamed third-party workers. There's – further, there's benefits to the taxpayers, right? There's benefits to the government, obviously, in catching cheating contractors. But the benefit doesn't come directly to the requester. But it gives power. There's sort of a shelter doctrine here, that if the requester is the Torres Consulting Group, then that the labor unions and the members of the labor unions, the fact that they're benefited doesn't matter? No. No, Your Honor. The fact – well, the doctrine here is that one must look at the actual requester. And all the parties agree that the actual requester for the purposes of this analysis is the Colorado Building and Construction Association. So let me change the facts for a second and see. This is a hypothetical, so don't tell me that it's not the facts in this case. Certainly not. A union member comes to your law firm and you said – you say, all right, you may have been underpaid. The Torres Consulting Group will submit a request on your behalf to the VA or some government agency for the records so we can determine whether or not to pursue a claim on your behalf. Would that be a commercial use? If the facts were changed, that the worker was seeking for the records? I just gave you the facts. Right. That the worker – that we were seeking records for the benefit of the worker directly? Yes. I would say that it could be. I would ultimately say that it's – Well, those are the facts. On those facts, you submit that request to the VA and you say, here's why I'm submitting this request. Mr. Jones has come to me and he believes he was underpaid and I need to get the records to find out whether he was. Those are all the facts. Okay. You submit those – you submit a FOIA request to the VA and they say this is a commercial request. Would that be wrong? It would be wrong, Your Honor. Why? And it would be wrong under this Court's decision in McClellan – excuse me – the McClellan Ecological Seepage Situation v. Carlucci. Now, I understand there's a public interest fee. It has a different standard as I've written in the case.  Right. But to the extent that it is helpful here, in Carlucci, this Court had decided that claims for damages do not constitute a commercial interest. So in the instance where the law firm would be representing that individual for back wages, because that's ultimately what it is, right, that cheating the contractor has not paid the wages due under law and we were seeking simply wages, not even damages, not even economic damages in addition to the wages. If damages in tort don't constitute – don't constitute damages. If damages in tort, these are somebody who's saying I wasn't paid enough and I'm seeking contract damages. Is that a commercial claim? I would say in the – for this Court's decision in McClellan, it is not. Well, McClellan involves a tort claim. So tell me – I mean, maybe your position is it's not commercial. My initial position is it's not commercial. But to the extent that this Court would believe that the fact situation that you have just outlined is commercial, then it is distinguishable from the fact scenario that we have present. Well, the reason that I'm interested in it is because of Judge Eaton's question. It would seem strange to say it was commercial if the union member requested it directly, but not commercial if you form a nonprofit group to request the information on behalf of the union members. Well, but that's – so that's not quite what's happening here, Your Honor. And I – again, I want to reiterate that my position is that in the first instance that you mentioned, it's not commercial given this precedent and given the text of the FOIA. But the difference here is that the union is not making the request on itself. The benefit – the question under the commercial use test is, is it actually being used for a commercial purpose without any regard for identity? But with respect, counsel, I just want to cite the regulation, and this is not a hypothetical. The regulation indicates that, in quotes, to the extent possible, the FOIA officer shall determine the use of which the requester will put the requested records. That's what the regulation says. It has nothing to do, per se, with the identity of the person involved. So in this case, you ask what you ask. They looked at it, asked for some clarification. You told them that. And they said, you know, the use that you're going to put this to is not a public use. This is a private use. It's a commercial use. What's wrong with that? There are three things wrong with that, Your Honor. First is, in fact, the FOIA itself incorporates the OMB regulations, the OMB uniform fee schedule. And the OMB uniform fee schedule and guidelines does, in fact, say, and I'm going to quote from that for you, that request that identity, excuse me, that use is the exclusive determining criterion in placement in the commercial use category. It says that use, not identity, controls. I know you keep talking about identity. But I'm just saying to you, I just cited use. Here, they wanted to know what the use was. They didn't ask who you were. They asked what the use was. And they determined that was a commercial use. What's the matter with that? I respectfully disagree, Your Honor, because of the statements contained in the record. They didn't they asked what our use was. We told them what the use was. And they disbelieved our use based on the identity of the requester. That's the problem. How do you know that? Because of the statements from the record. I'll quote the statements from the record for you. Here is one example of the VA's use of identity as an impermissible factor in placement in this category. I quote, CBCTC, the intended recipient of information is comprised of unions who represent the business interests of their members. That's from the certified record at 15-1. Kennedy. But that shows that they inquire about that to understand the use. That gets back to what Judge Hurwitz talked about. If you have an individual union member make this request, I think you sort of tentatively agreed that would be a commercial use. So if you form a nonprofit to ask on behalf of the union member, it doesn't change anything. But they may want to know, well, wait a minute, you know, you've asked about this. We need to understand the use. So in order to understand the use, what's the difference between what we got before from the individual and now the nonprofit that's formed on behalf of the individual? Well, the difference is, the difference for, let me be clear on a couple of things, Your Honor. First of all, that's not what the record said. That's not what the VA ever said. The VA had made a number of statements. Here's another statement. Let me give you a statement where, and they quote, the word, quote, trades is a part of the CBCTC's name, Colorado Building and Construction Trades Council. They looked at the identity of the requester, Your Honor, and that is impermissible. They didn't, they did not. But you can't ask who you are in order to determine how you use the information? You can ask who you are, certainly, Your Honor. But what you can't do is assume that the use flows from the identity. Let me give you, by way of example, if I represented Acme Corporation, and Acme Corporation made the same exact FOIA request at issue, and we made it in a representative capacity. If the Department came back and said, you are Acme Corporation, you have the word corporation in your name, clearly, you're a commercial use requester. That's precisely what the Department did here. If the Department said, you're a corporation, the purpose of a corporation is to make profits for its shareholders. As a result. Scalia. But didn't they do more? I'm looking at the, this is at ER 132 through 134. You get a three-page letter from the VA, which deals with both your initial request and your motion to reconsider. So they've now got all the information that you've put in front of them. And they say, we've considered all this information. They don't just simply say, and your name is Union, or your name is something else. They say, we've considered it all. You're really not going to use it for the public benefit, because it's a question of how much wages were being paid by a subcontractor. That may be wrong. And they go through it at some length and say, therefore, I classify it as commercial. So I'm a little bit, I'm having difficulty understanding your argument that it was denied simply because of the identity of the requester. Well, the issue is that identity can not be any part of the analysis. Well, surely. The fact that the fact. Surely, Judge Eaton's question, you have to identify the requester, do you not? Well, yes. And it is part of it. I'm sorry? It is part of it, then. Well, no, Your Honor. The OMB regulation says that for a placement in the commercial use category, use, not identity, controls. That use is the exclusive determining criterion. Use, not identity, controls. It doesn't say identity is completely irrelevant and may not be considered. It says use, controls. Use, not identity, controls. Agencies, in determining whether a request properly belongs in the commercial use category, agencies must determine the use to which a requester would put the document. So tell me why this letter from the VA, ER-132, is — it talks about use. It says the requested information is not going to be used for the public interest. It's going to be used to show how the subcontractor does business, and that use is commercial. There is a fundamental misunderstanding that the Department has in its misuse of this test and its misapplication in this context, and that is that the public interest prong that you just cited in that letter, Your Honor, does not exist in the commercial use or the all-other-use request category classification. And that's a — that's a crux of this matter, that this is not a public interest fee waiver case. This is 5 U.S.C. 552A4A — A4A2, 1 through 3. The public interest fee waiver, and that's the request categories, the public interest fee waiver test, is a separate part of the request category. Scalia. Now, I understand that, but your letter to them says, we don't want this information for a commercial purpose. We want it to contribute to the public's understanding of how government works. And their response is, no, you want it to determine how subcontractors pay. That's not — you know, so your justification for why this is not commercial is not sufficient. The point of confusion, Your Honor, is that initially we made a fee waiver. We made a public interest fee waiver. Right. And that's not in front of us. And that's not why we're here. And we said we agreed that that is non-issue. We agreed with their determination. Then we said, well, hold on a moment. Just ask my colleagues that your — that counsel's time is up. Do either of you have any additional questions you need to pose? No. Okay, counsel, I think we're set. Thank you for your argument. We'll hear from the VA. May it please the Court, Christina Morrison on behalf of the agency. In this case, the agency did correctly classify the Trade Council's FOIA request based on, number one, the commercial nature of the information that was requested and its direct connection to the stated purpose, interest, and use of that information. But did you — I'm now looking at the e-mails that went back and forth. And didn't — didn't you qualify — didn't you classify this as commercial use because it was being requested by a union? No, Your Honor, not at all. It was classified as a commercial use based on the stated — the type of — the nature of the information. So under McClellan, information — Yeah, tell me where in the record you did that. I mean, and I understand this is an informal exchange process. They say — you say, well, I want fees. They say, we don't — we don't think you should. And you say — you say the category is commercial use seems to be the decision. Yes. That's the e-mail of April 30. Is there any analysis? The analysis comes throughout the administrative process. So — Yeah, so tell me where. On the record, defense supplemental excerpts of record 125 through 127, that is where the Trade Council sought, because it's a labor union, to be put in the other category. The VA responded at 130 through 132 and 48 through 50, talking about the nature of the information. It's commercial information under McClellan if it relates to commerce trade or profit. And the VA explains that this shows how the private subcontractor pays its subcontractors, namely how it does its business. That is commercial related information. And is there — is there anything in any regulation that you're aware of that forbids the agency from taking — not making the decision based on the identity, but taking into account the identity of the requester in order to determine the appropriate use being made of it? There's nothing. In fact, we have to consider the identity in order to determine the direct connection between the nature of the information and its use. You really couldn't decide this without knowing the identity of the requester, could you? Correct. That is absolutely correct. Otherwise — And I'm now — I'm now — you're talking about ER-159? Is that where you — and I'm — I apologize to counsel, I was looking at the letter denying the fee waiver. I meant to be looking at the letter 159 denying the appeal. Is that what you're saying the analysis is? As well, yes. In the — in the VA denial of the appeal, it went to the website and looked at the stated interests of the trade council. That's not identity and an objective to help provide craft personnel competitive rates to be able to bid competitively for these types of projects. I don't — So, for example, if you got a letter from the trade council, the trade council just says, we need this information, didn't explain anything else. Arguably, if you made a decision on that basis alone, that would be impermissible. But if they make the request, identify who it is, you write back and say, we need some clarification here. What are you going to use this for? And they tell you, in this case, that it's going to be used in connection with trying to get back wages and so on. That's perfectly appropriate, isn't it, under the regulations? It is perfectly appropriate. So is obtaining back wages commercial? Obtaining back wages? Yeah. Commercial? Sure. That's the question I asked your colleague. Let's assume that a union member came to you and said, I'd like to see, you know, the payroll records for the subcontractor because I think they cheated me. Would he be requesting that for a commercial purpose? Yes, because it relates to business, commerce, or profit. And in this case, in the FOIA — the two FOIA requests that were submitted, the trade council did more than say it was just to seek back pay for unidentified third parties. The specific language that they used was that, you know, they noted that the construction industry is highly competitive, where contractors are trying to gain a competitive edge, and they're seeking to allow contractors to bid in a fair environment. They seek to expose fraudulent contractors. Taking this into consideration with the website, which is to provide craft personnel at competitive rates and ensuring that others within the construction industry are paying pursuant to the Davis-Bacon Act, all of that relates to the commercial, trade, and profit interests. What decision was the district court reviewing? Is it this letter denying the appeal at ER 159? Is it an earlier decision? Is it — I mean, there's a whole series of informal exchanges and requests for reconsideration, and then is this, in effect, the final agency action, this letter at 159? The district court reviews the entire record, so — and the difficulty here is it did start out as a fee waiver case, and then by the time it made it to the district court, the trade council had winnowed it down in terms of — to just the fee categorization. So what the district court was charged with and correctly reviewed was, under the VA regulations, did a use or purpose of that information further commercial, trade, or profit interests of the actual requester, the trade council? And seeking the payroll information that a private contractor in the construction industry pays its subcontractors is a use that furthers the interests of the trade council, the commercial, trade, or profit interests. And the district court reviewed that. Is it a matter that the trade council is a nonprofit? No. And this is based on McClellan, as well as the OMB guidelines, and even the VA regulations and guidelines. What difference — what role would the use of information that the agency would provide as a form of discovery play in your decision? Does Your Honor mean in terms of a private litigation? Yeah. In other words, if the agency views what's being requested as basically a form of discovery that would be used in the litigation, would that play any role in its decision about whether it was a commercial use? Not necessarily, because the standard for the fee categorization is simply there has to be a use or purpose. There can be multiple uses. So if their request had said, this is a scandal and we want to go to Congress about it, would that have been a commercial use? Not on its face, necessarily. It would probably prompt additional information if it wasn't clear what the use or if it would be connected to a commercial use. However, in this case, it was clear. The Trade Council identified the purpose and interest of trying to — On its website. On its website, as well as in the FOIA request, indicating it wants to ensure that contractors within these trades can fairly compete at competitive rates and expose those who are violating that — violating the Davis-Bacon Act. And so by forwarding that information, it furthers the trade, commercial, and profit interests of the Trade Council members. If the requester were an investigative reporter, would that be a commercial use? Probably not. Because — Even though his newspaper intended to make a profit off of his investigation? The assumption, if it's a news media, is typically it's going to fall in the first category. It's not a — so the identity there is also considered. However, if the newspaper was only using it for a commercial, personal, profit interest, then potentially it could be labeled as a commercial use request. It's not just checking off a box in terms of the identity of who's making that request. So in this case, we believe that the agency appropriately categorized it based on the provided it is not an identity-only test. However, the identity is a factor that needs to be considered when determining if it furthers the commercial, trade, or profit interest of the requester. And that's what happened here. If the Court has no further questions — I think not. Thank you very much. We simply ask that you affirm. Thank you. Counsel, you used up all your time, but since she finished early, we'll give you a minute if you have something vital that you would like to say. Thank you, Your Honor. Briefly, the issue, again, is the misuse and the misclassification of this. The use of the commercial use test, the OMB regulations say use non-identity controls. The Department misused the identity as a factor for placement in that category, which is not permissible. It used the public interest fee waiver test, which is not applicable here. And it didn't provide the procedural requirements, and it misapplied the procedural requirements in coming back and asking if it had any reasonable cause to doubt our use, to ask for those questions. And the union's identity cannot be the basis for reasonable cause to doubt the use of the records. And for those reasons, this Court should overturn the lower court's decision. Thank you. Thank you both. Thank you for your argument. The case just argued is submitted.
judges: M. Smith, Hurwitz, Eaton